UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -v-                                            CASE NO:    8:25-CR-0047

JULIO DIAZ-MARTINEZ,
                  Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF**
**JULIO DIAZ-MARTINEZ'S APPEAL OF DETENTION ORDER**

DATED: January 31, 2025                        Respectfully submitted,

                                                      LISA A. PEEBLES
                                                      Federal Public Defender
                                                      */s/ Courtenay K. McKeon*
                                      By:    Courtenay K. McKeon, Esq.
                                                      Assistant Federal Public Defender
                                                      Bar Roll No. 515841
                                                      Clinton Exchange, 3rd Floor
                                                      4 Clinton Square
                                                      Syracuse, New York   13202
                                                      (315) 701-0080

**PRELIMINARY STATEMENT**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Pretrial detention is governed by 18 U.S.C. § 3142, the Bail Reform Act. Here, the magistrate judge misapplied the Bail Reform Act by scheduling a detention hearing despite the government's failure to meet its burden of establishing that it was entitled to such a hearing. The magistrate judge issued an order of detention pending that hearing. (Case No. 8:25-MJ-0015, Dkt. No. 4.) As a result, defendant Julio Diaz-Martinez has been wrongfully detained since January 28, 2025. By this appeal, brought pursuant to Local Rule 59.1(a)(3), the defense seeks Mr. Diaz-Martinez's release.

**THE BAIL REFORM ACT DID NOT AUTHORIZE THE MAGISTRATE JUDGE TO CONDUCT A DETENTION HEARING IN THIS CASE**

The Bail Reform Act authorizes the Court to conduct a detention hearing only in carefully defined, limited circumstances. The burden is on the government to establish those circumstances by a preponderance of the evidence at the initial appearance. The government did not meet its burden at the initial appearance in this case. Therefore, as discussed below, the magistrate judge was not authorized to schedule a detention hearing and should have released Mr. Diaz-Martinez at the conclusion of the initial appearance.

> A. **The Bail Reform Act Allows the Court to Conduct a Detention Hearing Only if Evidence is Presented at the Initial Appearance that One of the Factors Listed in 18 U.S.C. § 3142(f) Exists—Otherwise the Defendant Must Be Released.**

The Bail Reform Act allows the Court to conduct a detention hearing only if evidence is presented at the initial appearance that one of the seven factors listed in 18 U.S.C. § 3142(f) exists. This requires the government to (1) cite one of the seven (f) factors as a reason for requesting a detention hearing; and (2) present evidence establishing that the cited factor exists.

2

1. ***One of the seven (f) factors must be present for the Court to conduct a detention hearing—otherwise the defendant must be released at the conclusion of the initial appearance.***

According to the plain language of the Bail Reform Act, "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in 18 U.S.C. § 3142(f)(1) and (f)(2). These factors are commonly referred to as the "(f) factors."

18 U.S.C. § 3142(f)(1) contains the first five (f) factors. It states that the government may request a detention hearing if the defendant is charged with one of the following crimes:

- a crime of violence, sex trafficking of children or by force, fraud, or coercion (18 U.S.C. § 1591), or a federal crime of terrorism (18 U.S.C. § 2332b(g)(5)(B)) for which a maximum term of imprisonment of 10 years or more is prescribed;

- an offense for which the maximum sentence is life imprisonment or death;

- an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or chapter 705 of title 46;

- any felony if such person has been convicted of two or more offenses described in the three bullet points above, or two or more state/local offenses that would have been offenses described in the three bullet points above if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses; or

- any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device, or any other dangerous weapon, or involves a failure to register as a sex offender (18 U.S.C. § 2250).

18 U.S.C. § 3142(f)(2) contains the other two (f) factors. It states that the government may request a detention hearing (or the Court may order one on its own motion) if the case involves:

- a serious risk that such person will flee; or
- a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The Supreme Court has affirmed that the plain language of the Bail Reform Act means what it says it means: "Detention hearings [are] available if" and only if one of the seven (f) factors is present. *Salerno*, 481 U.S. at 747. "Absent one of these circumstances, detention is not an option." *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999). Every federal court of appeals that has examined this issue agrees that it is illegal to hold a detention hearing unless the government properly invokes one of the (f) factors at the initial appearance. *See, e.g.*, *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 48–49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Twine,* 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999). As the Second Circuit has noted, "Section 3142(f)(1) thus performs a gate-keeping function by limiting the circumstances under which pretrial detention may be sought to the most serious of crimes." *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) (punctuation omitted).

> **2. *The government must establish the cited (f) factor by a preponderance of the evidence at the initial appearance.***

Simply citing an (f) factor is not enough to trigger a detention hearing. The government must do more. In order for a court to lawfully move forward from an initial appearance to a

detention hearing, "the Government must establish by a preponderance of the evidence that it is entitled to a detention hearing." *Watkins*, 940 F.3d at 158. Thus, the government must establish one of the (f) factors by a preponderance of the evidence at the initial appearance. If it does not do so, the defendant must be released at the conclusion of the initial appearance.

> B. **Mr. Diaz-Martinez Should Have Been Released at the Conclusion of his Initial Appearance Because the Government Did Not Establish an (f) Factor By a Preponderance of the Evidence.**

Here, the government did not establish an (f) factor by a preponderance of the evidence at Mr. Diaz-Martinez's initial appearance. Accordingly, Mr. Diaz-Martinez's should have been released at the conclusion of that appearance. The magistrate judge's failure to do so has resulted in Mr. Diaz-Martinez being wrongfully detained since January 28, 2025.

Before the initial appearance in this case, the defense emailed a letter to counsel and the Court setting forth the legal standards governing detention.[1] At the initial appearance in this case, the magistrate judge acknowledged receiving and reviewing the letter.[2] The government then requested a detention hearing on the basis of the "serious risk of flight" (f) factor. The government's only evidence of "serious risk of flight" was the crime charged, its potential sentence, and Mr. Diaz-Martinez's immigration status. The magistrate judge found that the government had met its burden, scheduled a detention hearing, and issued an order detaining Mr. Diaz-Martinez pending that hearing.

The magistrate judge was not authorized to schedule a detention hearing and detain Mr. Diaz-Martinez pending that hearing because the government did not establish a serious risk of

---

[1] The letter could not be filed on the docket at that time because the case had not yet been opened on ECF. Defense counsel later placed the letter on the docket so that the record would be complete. (Case No. 8:25-MJ-0015, Dkt. No. 9.)
[2] The transcript of the hearing is not yet available. The defense is filing this brief prior to receiving the transcript at the direction of the Court. (Text Notice Jan. 31, 2025.)

flight by a preponderance of the evidence. It is black-letter law in the Second Circuit that the crime charged and its potential sentence do not establish a serious risk of flight. In *United States v. Friedman*, 837 F.2d 48 (2d Cir. 1988), the Second Circuit clearly stated that "**we have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight**." *Id*. at 50 (emphasis added). District courts around the country have echoed the Second Circuit's language.[3] For example, in a published case from the Southern District of Florida, the court directly addressed this issue:

> In cases where only a serious risk of flight is at issue under § 3142(f)(2), **it is generally accepted that more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of flight**. A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention.

*United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) (emphasis added) (citations omitted).

The conclusion that the mere nature of the charged offense is insufficient to establish a serious risk of flight is also supported by logic. Congress is able to add charges to the list of offenses in (f)(1) for which the government may move for detention based solely on the nature of the charged offense. For example, at the time *Friedman* was decided, child pornography crimes were not listed in (f)(1). *See Friedman*, 837 F.2d at 49 (noting that Friedman, who was charged with child pornography offenses, had not been charged with a crime enumerated in (f)(1)). Where a defendant is not charged with the one of the offenses that Congress has included in (f)(1), detention simply on the basis of the crime charged is not authorized. As one court has put it, "if the charge alone warranted detention, Congress could have included it among the crimes for which

---

[3] Westlaw indicates that district courts in Connecticut, Washington, D.C., Florida, Illinois, Kentucky, New York, and Wisconsin have favorably cited *Friedman* on this issue.

detention is presumed, but it did not." *United States v. Lopez-Chilel*, No. CR 22-20141, 2022 WL 1178503, at *3 (E.D. Mich. Apr. 20, 2022). The charge in this case is not listed in (f)(1). Accordingly, the government could not rely on the crime charged to meet its burden of showing that a detention hearing was authorized under the Bail Reform Act.

The government cited Mr. Diaz-Martinez's immigration status as evidence of "serious risk of flight." The presence of an immigration detainer is insufficient to establish a serious risk of flight. Rather, detention under § 3142(f)(2) requires a finding that there is a serious risk that the defendant will fail to appear due to a volitional act. *See United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009) (holding that in order to detain defendant, the risk of flight must involve an element of the defendant's own volition).

The Second Circuit has never addressed this issue. However, the only Courts of Appeal to do so have concluded that the existence of an immigration detainer does not constitute a serious risk of flight within the meaning of the Bail Reform Act. *See United States v. Santos-Flores*, 794 F.3d 1088, 1091–92 (9th Cir. 2015) (holding that a district court may not rely on the "existence of an ICE detainer and the probability of . . . immigration detention and removal . . . to find that no condition or combination of conditions will reasonably assure . . . appearance" because "the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition"); *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019) (reiterating holding of *Santos-Flores*); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) ("We agree . . . that a risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based."). The majority of district courts to address the issue have agreed. *See, e.g*, *United States v. Balde*, 462 F. Supp. 3d 465, 469 (S.D.N.Y. 2020) ("[T]he Government argues that, if Balde is released from BOP custody, he will automatically be returned

7

to ICE custody, whereupon he may well be removed from the United States . . . . However, if that were to happen, his failure to appear in future court proceedings is not a result of his own volition."); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1176-78 (D. Or. 2012) (collecting and summarizing cases). Although a few district courts have held to the contrary, none of those decisions has been upheld by an appellate court. *See United States v. Lopez*, No. 23-CR-10269-AK, 2023 WL 8039318, at *2–3 (D. Mass. Nov. 20, 2023) (noting lack of federal appellate decisions holding that immigration detainer is sufficient to show serious risk of flight); *United States v. Herrera-Quino*, No. 23-MJ-16105-JRA, 2024 WL 376677, at *4 (D.N.J. Feb. 1, 2024) (same). No federal appellate court has held that the existence of an immigration detainer constitutes a serious risk of flight. Therefore, Mr. Diaz-Martinez's immigration status is not evidence of a serious risk of flight. The magistrate judge, therefore, erred by finding that the government had met its burden, scheduling a detention hearing, and detaining Mr. Diaz-Martinez pending that hearing.

The error by the government and the magistrate judge in this case is not an isolated event in this district. On January 10, 2025, District Court Judge D'Agostino issued an order finding that the government "did not present enough evidence at [the] initial appearance to establish that there is 'a serious risk Defendant will flee' because the Government relied solely on the seriousness of Defendant's crime and his potential three-year sentence." *United States v. Terrance*, Case No. 8:24-CR-0456 (MAD), Dkt. No. 8 at 14 (punctuation omitted). Judge D'Agostino stated: "It is important to remember that the determination of whether the Government is entitled to a detention hearing and whether a defendant should be detained are two separate inquiries . . . . A detention hearing is not automatically warranted just because the Government has brought a criminal complaint." *Id*. at 19 n.3 (citing *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992)). Judge

D'Agostino "encourage[d] . . . parties to review the current state of the law on the requirements for obtaining a detention hearing and subsequently seeking detention." *Id*. Judge D'Agostino's direction appears to have been disregarded by both the government and the magistrate court in this case.

The error in this case is part of a nationwide trend. In a national study, The University of Chicago Law School's Federal Criminal Justice Clinic (FCJC) found that courts nationwide do not consistently adhere to the correct legal standard in non-(f)(1) cases. Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 93 (2022), https://freedomdenied.law.uchicago.edu/report. Across hundreds of non-(f)(1) cases like this one, 12% of defendants were unlawfully detained at the initial appearance, as "no statutory basis for detention existed under § 3142(f)." *Id*. at 95. In 97% of non-(f)(1) cases where the government was seeking detention, the prosecutor "cited improper grounds, like danger to the community or ordinary risk of flight." *Id*. at 99. Yet every single defendant was nevertheless detained at the initial appearance and faced an "improper Detention Hearing." *Id*. These troubling national data suggest that courts must vigilantly ensure that the government's detention requests comport with the Bail Reform Act's requirements. The unlawful detentions that the study documents are likely "just the tip of the iceberg." *Id*. at 100. In fact, 60% of all federal pretrial cases are non-(f)(1) cases, meaning that in over half of cases nationwide, "there is a real question of whether the law allows a judge to hold a Detention Hearing at all." *Id*. at 92. Yet defendants are detained at the initial appearance in 76% of non-(f)(1) cases nationwide, even though the "only valid ground for detention in such cases requires the prosecutor to prove that the arrestee poses a 'serious risk' of flight or obstruction." *Id*. at 100.

In summary, the government did not establish an (f) factor by the preponderance of the evidence at the initial appearance in this case. Thus, the magistrate judge violated the Bail Reform Act by scheduling a detention hearing and detaining Mr. Diaz-Martinez pending that hearing. As a result, Mr. Diaz-Martinez has been wrongfully detained since January 28, 2025. The defense respectfully requests that this Court reverse the magistrate judge and order that Mr. Diaz-Martinez be released immediately.

## CONCLUSION

Mr. Diaz-Martinez respectfully requests the court reverse the magistrate judge's order (Dkt. No. 4) and release him from custody pending trial.

DATED: January 31, 2025                     Respectfully submitted,

                                                     LISA A. PEEBLES
                                                     Federal Public Defender
                                                     */s/ Courtenay K. McKeon*
                                 By:    Courtenay K. McKeon, Esq.
                                                     Assistant Federal Public Defender
                                                     Bar Roll No. 515841
                                                     Clinton Exchange, 3rd Floor
                                                     4 Clinton Square
                                                     Syracuse, New York   13202
                                                     (315) 701-0080

cc:     Troy Anderson, AUSA (by ECF ); Julio Diaz-Martinez (by mail)